FILED

01/27/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0054

IN THE SUPREME COURT OF THE STATE OF MONTANA

DA 25-0054

FILED

JAN 2 7 2025

Bowen Greenwood
Clerk of Supreme Court
State of Montana

DAVID SASLAV, MONTANA
ENVIRONMENTAL INFORMATION CENTER,
and KAYLEE HAFER,

Plaintiffs and Appellees,

and

MONTANA FREE PRESS, THE ASSOCIATED
PRESS, MONTANA BROADCASTERS
ASSOCIATION, MONTANA NEWSPAPER
ASSOCIATION, DAILY MONTANAN,
HAGADONE MEDIA MONTANA, LLC, LEE
ENTERPRISEES, INC., and ADAMS
PUBLISHING GROUP,

Intervenor-Plaintiffs and Appellees,

v.

JERRY HOWE, in his official capacity as
EXECUTIVE DIRECTOR OF THE MONTANA
LEGISLATIVE SERVICES DIVISION of the
MONTANA STATE LEGISLATURE,
MONTANA LEGISLATIVE SERVICES
DIVISION of the MONTANA LEGISLATURE,

Defendants and Appellants,

and

STATE OF MONTANA, and STATE SENATOR
BARRY USHER,

Intervenor-Defendants and Appellants.

ORDER

Intervenor-Defendants and Appellants State of Montana and State Senator Barry Usher (collectively the State) move this Court to immediately stay the January 21, 2025 Order Granting Preliminary Injunction and Writ of Mandamus of the Eighth Judicial District Court, Cascade County, in its Cause No. CDV-24-539. That Order, in part, requires the Legislative Services Division to produce the complete, unredacted contents of junque files requested by the Plaintiffs and Intervenor-Plaintiffs within five business days. The State requested relief on an emergency basis, alleging that the District Court's Order does not provide adequate time for it to seek a stay through M. R. App. P. 22(1). We requested expedited responses from Appellees and Intervenor-Appellees. Plaintiffs and Appellees David Saslav, Montana Environmental Information Center, and Kaylee Hafer (collectively Saslav), and Intervenor-Plaintiffs and Appellees Montana Free Press, The Associated Press, Montana Broadcasters Association, Montana Newspaper Association, Daily Montanan, Hagadone Media Montana, LLC, Lee Enterprises, Inc., and Adams Publishing Group (collectively the Press) have responded in opposition to the State's motion to stay.

The underlying dispute concerns the public's right to view certain information contained within the "junque files" of the current legislative session. "Junque file" is the term the Montana Legislative Services Division uses to refer to the collection of physical and electronic documents comprising the background information of a proposed bill—including bill drafts, bill drafting requests, background material, correspondence with legislative staff, correspondence with lobbyists and stakeholders, and legal staff notes. In 1995, a District Court ruled that the kind of bill-drafting documents that are found in junque files are public documents that the public has a constitutional right to examine. *Mont. Env't Info. Ctr. v. Mont. Env't Quality Council*, No. CDV-95-207 (Mont. First Jud. Dist. filed Aug. 7, 1995). This ruling was not appealed and, until September 2024, the junque files were open to public inspection without dispute.

On September 24, 2024, Legislative Services sent a memo to each 2025 legislator,

2

advising them that Legislative Services would no longer disclose the entire contents of a bill's junque file unless the legislator waived legislative privilege. Legislative Services enacted this policy in response to a July 2024 District Court ruling in *Mont. Conservation Voters v. Jacobsen*, No. DDV 2023-702 (Mont. First Jud. Dist. Ct. filed July 12, 2024), in which the court quashed a subpoena and subpoena duces tecum that was served on State Senator Keith Regier, seeking to depose him regarding a bill he had sponsored. In that case, the District Court ruled, in relevant part, "A party may not compel the production of nonpublic documents that contain a legislator's deliberations and motivations or would be tantamount to questioning the legislator about their deliberations and motivations."

The current litigation ensued after Saslav was denied unredacted copies of certain junque files for proposed bills of the 2025 legislative session. Following briefing and oral argument, the District Court issued the Order at issue here, in which it enjoined the State from enforcing any aspect of a "junque files policy" and ordered the State to produce complete and unredacted copies of the requested junque files within five business days: January 28, 2025.

On January 22, 2025, the State appealed the District Court's Order.[1] The State also filed the Opposed Emergency Motion to Stay that is the subject of this Order.

To stay a judgment or order of a district court pending appeal, the party seeking relief must file a motion in the district court under M. R. App. P. 22(1)(a)(i). Upon the district court's grant or denial of that motion, a party may then move this Court for relief under M. R. App. P. 22(2). Such motion must meet certain requirements, including "[d]emonstrate good cause for the relief requested, supported by affidavit." M. R. App. P. 22(2)(a)(i). Except in extraordinary circumstances supported by affidavit, this Court will summarily

---

[1] Subsequent to the filing of the Notice of Appeal on January 22, 2025, the District Court issued an order captioned *Amended* Order Granting Preliminary Injunction and Writ of Mandamus that corrected some typographic errors. Although the court captioned it an "amended" order, it was in effect a nunc pro tunc order, issued via the court's inherent power to correct clerical errors. Therefore it had no effect on the day from which the five-day deadline runs.

deny motions that have not been filed in accordance with M. R. App. P. 22(1) and (2)(a). M. R. App. P. 2(4).

In filing its emergency motion to stay, the State admits it has not complied with Rule 22. It asserts there is insufficient time to do so between the District Court's ruling and the deadline for providing Saslav with the requested junque files. In its motion, the State advises us that at the time it filed this motion, it was drafting and preparing a motion to stay pursuant to M. R. App. P. 22(1) that it intended to file in the District Court.

Responding in opposition to the State's emergency motion, Saslav and the Press each argue we should deny the State's motion because the State failed to comply with the appellate rules. Saslav argues the State conceded it did not file its motion in accordance with M. R. App. P. 22(1) and (2), but did not fulfill the requirements of M. R. App. P. 22(4), and thus we should deny the State's request because it did not file an affidavit in support of its motion to show the existence of both good cause and extraordinary circumstances. The Press notes that we have previously denied a similar motion where the party failed to submit an affidavit supporting the alleged "extraordinary circumstances" warranting consideration despite failure to comply with Rule 22. *Dahood v. Lussy*, No. DA 19-0577, Order (Mont. Oct. 29, 2019) (denying request for Court to issue stay where motion to stay under Rule 22(1) had been filed but not yet ruled upon by district court).

The State argues, however, that we recently granted a stay in an analogous situation in *Mercer v. Mont. Dep't of Pub. Health & Hum. Servs.*, No. DA 24-0512, Order (Mont. Sept. 5, 2024). Similar to the present case, Appellant Montana Department of Public Health and Human Services (DPHHS) moved this Court for an emergency stay because it alleged the District Court's order would compel it to disclose privileged information on a date that was too soon to allow the parties to fully brief a motion to stay. DPHHS indicated, however, that it understood this Court may stay the case only temporarily to allow "a full Rule 22" procedure to occur.

4

Ultimately, we never ruled on DPHHS's motion for emergency stay because the District Court issued its ruling denying stay shortly after DPHHS filed its motion. DPHHS then filed a new motion for relief from the District Court's denial of its motion to stay, pursuant to M. R. App. P. 22(2), and the Order the State relies upon here is our Order granting such relief. Thus, the Order does not stand for the relief the State requests here.

In *Mercer*, the urgency to dispose of the case arose because Mercer, who had requested access to certain dependent-neglect records from DPHHS, was statutorily limited to six months from the date DPHHS received his written request to review those records. Section 41-3-205(4)(c), MCA. In requesting a stay of the District Court order to provide Mercer with access to those records, DPHHS stipulated to toll the six-month deadline. *Mercer*, Order at 7. However, we are cognizant of the fact that the Legislature is in session, the value of these junque files to Saslav is likely of very limited duration, and the State cannot stipulate to postpone consideration of the bills at issue.

In *In re Parenting of D.I.B.*, we granted an interim stay on an emergency basis where the District Court had denied the appellant parent's motion for stay pending appeal and where the underlying order transferring custody from one parent to the other would go into effect before the motion for relief under M. R. App. P. 22(2) could be fully briefed and ruled upon by this Court. *In re Parenting of D.I.B.*, DA 18-0282 Order (Mont. June 19, 2018). The interim stay remained in effect for two weeks, until the Rule 22(2) motion could be fully briefed and ruled upon by this Court. *In re Parenting of D.I.B.*, DA 18-0282 Order (Mont. July 3, 2018). In the present case, a two-week delay could render Saslav's junque file request meaningless, but an interim stay of much shorter duration might be feasible if the District Court could promptly rule on the State's motion to stay and the parties could again expedite their briefing in this Court, if necessary.

Because the State advised us on January 22, 2025, that it was filing a motion to stay in the District Court pursuant to M. R. App. P. 22(1), we contacted the District Court this morning to determine if the motion was fully briefed and whether a ruling was imminent.

5

We discovered instead that the State had not filed the motion to stay in spite of its representation to this Court. Thus the State has not diligently pursued the stay nor attempted to comply with Rule 22 while seeking emergency relief from this Court in the interim. We conclude that the State has not demonstrated extraordinary circumstances that support this Court suspending the requirements of M. R. App. P. 22(1) and (2), nor has the State demonstrated good cause to do so, in light of its failure to file an affidavit in support of its motion and its lack of diligence in pursuing a stay in the District Court. However, this does not preclude the State from moving the District Court to stay this matter and, if necessary, requesting relief from this Court under Rule 22(2), nor does it preclude the State from filing a new motion in this Court that complies with Rule 22(4).

IT IS HEREBY ORDERED the State's Opposed Emergency Motion to Stay the District Court's Order Granting Preliminary Injunction and Writ of Mandamus is DENIED WITHOUT PREJUDICE.

The Clerk is directed to provide a true copy of this Order to all parties of record, to the Clerk of the Cascade County District Court, and to Hon. John Kutzman, presiding Judge.

Dated this 27th day of January, 2025.

_____

_____

_____

_____

_____
Justices

6

Justice Jim Rice, dissenting.

I would grant the stay. The District Court's ordered timeframe, five days, is insufficient for application of the rules governing the response process within either the Uniform District Court Rules or the Appellate Rules. The Legislative Services Division has been diligently working under the July 2024 order issued by the First Judicial District Court, which reached the merits of this issue, since September, and that posture is now the status quo. Release of the files could entirely negate the pending litigation, and the previously entered order, without any determination on the merits.

_____
Justice

Chief Justice Cory Swanson joins the dissent of Justice Rice.

_____
Chief Justice

Chief Justice Cory Swanson, dissenting.

I join the dissent of Justice Rice and add the following.

The pending motion for stay has placed this Court in an unnecessarily manufactured dilemma. On one hand, the matter in dispute is of ultimate importance to the people of Montana, their enjoyment of the right of open government, and their expectation of clear and predictable judicial interpretations of the law and Constitution. On the other hand, at least

7

one Legislator advances a legitimate interest in understanding the substance and boundaries of the Legislative privilege, which is also enshrined in our Constitution and common law pre-dating the founding of our Republic.

This Court will clearly be required to evaluate this matter in detail and provide an opinion after full briefing and potentially argument on the merits. In the meantime, citizens and media organizations request their interests be enforced, and Legislators request the same. Until we can do so, the Court should grant a temporary stay for the following reasons: First, a five-day production deadline does not allow sufficient time for a party to follow the stay proceedings in District Court or the Supreme Court. Second, the State should seek a stay in District Court first, as preferred by M. R. App. P. 22, or provide an affidavit in accordance with Rule 22(4) explaining why this option is not viable. The fact that the State has failed to do so in this case is troubling, particularly given the State's footnote in its motion for stay in the Supreme Court in which it advised this Court it was filing a motion for stay simultaneously in District Court.

I would grant a temporary stay of five business days for the District Court to have the opportunity to consider the stay motion at its level. If the State does not seek a stay at the District Court or strictly comply with M. R. App. P. 22, I would deny the Stay.

_____
Chief Justice